IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| FREDERICK DWIGHT JONES, #157783, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) )   CASE NO. 2:23-CV-165-SMD |
| ROLANDA CALLOWAY, | ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM OPINION AND ORDER

**I.     INTRODUCTION**

Plaintiff Frederick Dwight Jones, an inmate proceeding *pro se*, filed an amended complaint pursuant to 42 U.S.C. § 1983.[1] Doc. 16. Although the amended complaint states multiple claims against multiple defendants, all but one claim against one defendant have been dismissed prior to entry of this Order. *See* Docs. 65, 66. The only remaining claim is whether Defendant Rolanda Calloway, Warden of Kilby Correctional Facility during some—but not all—of the events alleged in the amended complaint, violated Plaintiff's Fourteenth Amendment right to due process based on an alleged over-detention.[2]

Plaintiff has filed a Motion for Judgment on the Pleadings (Doc. 95), and Defendant

---

[1] The amended complaint is the operative pleading in this action. *See Dresdner Bank AG v. M/V Olympia Voyager*, 463 F.3d 1210, 1215 (11th Cir. 2006) ("An amended pleading supersedes the former pleading; the original pleading is abandoned by the amendment, and is no longer a part of the pleader's averments against his adversary.") (internal quotations and citation omitted).

[2] As will be discussed further below, to the extent Plaintiff's filings can be interpreted as attempting to state any additional claims against Defendant Calloway, such claims are not properly before the Court and will not be considered.

Calloway has filed a Motion for Summary Judgment (Doc. 104), to which Plaintiff has filed numerous documents in response (*see* Docs. 106, 108–110). Upon careful consideration, and for the reasons explained below, Plaintiff's Motion for Judgment on the Pleadings (Doc. 95) is DENIED, Defendant Calloway's Motion for Summary Judgment (Doc. 104) is GRANTED, and this case is DISMISSED with prejudice.

## II.     SUMMARY JUDGMENT STANDARD[3]

Under Rule 56 of the Federal Rules of Civil Procedure, a reviewing court must grant a motion for "summary judgment if the movant shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). "An issue of fact is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party." *Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1496 (11th Cir. 1996) (quoting *Anderson*, 477 U.S. at 248). "An issue is 'material' if it might affect the outcome of the case under the governing law." *Id.*

The party seeking summary judgment "always bears the initial responsibility of

---

[3] Given that both parties rely on evidence beyond the pleadings in this matter, the Court evaluates this case under the Rule 56(c) standard for summary judgment rather than the Rule 12(c) standard for judgment on the pleadings. *See, e.g., Dean v. 1715 Northside Drive, Inc.*, 224 F. Supp. 3d 1302, 1308 n.1 (N.D. Ga. 2016) ("While the standard applied by the court is nearly identical under both a motion for summary judgment and a motion for judgment on the pleadings, the court will consider matters outside of the pleadings in ruling on the [parties' motions] and thus should proceed under the Rule 56 framework.").

informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56). The movant can meet this burden by presenting evidence showing there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of his case on which he bears the ultimate burden of proof. *Id.* at 322–23.

Once the movant has satisfied this burden, the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. In doing so, and to avoid summary judgment, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The parties must support their assertions "that a fact cannot be or is genuinely disputed" by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations[], admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)–(B).

If the nonmovant "fails to properly address another party's assertion of fact as required by Rule 56(c)," then the Court may "consider the fact undisputed for purposes of

the motion" and "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(2)–(3).

"In reviewing whether the nonmoving party has met its burden, the [C]ourt must stop short of weighing the evidence and making credibility determinations of the truth of the matter." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998–99 (11th Cir. 1992) (citation omitted). "Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 999 (citations and internal quotations omitted). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (citation omitted). Furthermore, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990); *see also Anderson*, 477 U.S. at 249–50 ("If the evidence [on which the nonmoving party relies] is merely colorable, or is not significantly probative, summary judgment may be granted.") (internal citations omitted).

## III.   RELEVANT FACTS[4]

Plaintiff served 30 years on a life sentence for an Alabama state robbery conviction before receiving parole in 2004. Doc. 18 at 1; Doc. 17 at 4. In March of 2020, Plaintiff was

---

[4] The "facts" set forth herein are merely for purposes of resolving summary judgment and may not be the actual facts. *See Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1400 (11th Cir.), *opinion modified on reh'g*, 30 F.3d 1347 (11th Cir. 1994) ("[W]hat we state as 'facts' . . . for purposes of reviewing the rulings on the summary judgment motion [] may not be the actual facts.").

4

arrested in Indiana based on a violation of the terms of his Alabama state parole and transported to Kilby Correctional Facility. Doc. 16 at 2. Plaintiff did not receive a hearing on his alleged parole violation within 20 business days, in violation of Ala. Code § 15-22-32(a).[5] *Id*. Defendant Calloway arrived at Kilby on May 1, 2020, at which time she served as Acting Facility Head. Doc. 72-1 at 1.

In May of 2020, Plaintiff "wrote and spoke with" Defendant Calloway about not receiving a revocation hearing, but Defendant Calloway did not notify the Board of Pardons and Paroles of Plaintiff's detention. Doc. 16 at 2. However, Plaintiff's daughter "called the Board several times" in April of 2020; Plaintiff wrote multiple letters to the Board in or around May of 2020; and "the Human Rights Agency and Southern Poverty contacted the Board" about Plaintiff not receiving his hearing. Doc. 18 at 1–2; *see also* Doc. 16 at 2. Although Ala. Code § 15-22-32(a) requires that a detained, alleged parole violator be released back to parole supervision when no hearing occurs within the 20-day timeframe, Plaintiff was not released. *Id*.

On August 27, 2020, Assistant Field Director Terry Anthony instructed Defendant Calloway via email to release Plaintiff pursuant to Ala. Code § 15-22-32(a), and Plaintiff was released on September 1, 2020. Doc. 16 at 2. Plaintiff's revocation hearing was

---

[5] Ala. Code § 15-22-32(a) states in relevant part: "Whenever there is reasonable cause to believe that a prisoner who has been paroled has violated his or her parole, the Board of Pardons and Paroles, at its next meeting, may declare the parolee to be delinquent, and time owed shall date from the delinquency. The Department of Corrections, after receiving notice from the sheriff of the county jail where the parolee is being held, shall promptly notify the board of the return of a parolee charged with violation of his or her parole. The board, a single member of the board, a parole revocation hearing officer, or a designated parole officer shall hold a parole court at the prison or at another place as it may determine within 20 business days and consider the case of the parole violator . . . . If a hearing is not held within the specified 20 business days, the parolee shall be released back to parole supervision." Ala. Code § 15-22-32(a) (emphasis added).

subsequently held on September 16, 2020, in Decatur, Alabama, and it was recommended that he be returned to prison for three years. *Id*. at 3.

## IV. DISCUSSION

### a. To the extent Plaintiff seeks monetary damages from Defendant Calloway in her official capacity, Defendant Calloway is entitled to sovereign immunity.

Official capacity suits are "in all respects other than name, . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). As such, a state employee may not be sued in her official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984), or Congress has abrogated the immunity, *see Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 59 (1996). It is well-settled that Alabama has not waived its Eleventh Amendment immunity in § 1983 cases, nor has Congress abrogated it. *Holmes v. Hale*, 701 F. App'x 751, 753 (11th Cir. 2017) (citing *Carr v. City of Florence, Ala.*, 916 F.2d 1521, 1525 (11th Cir. 1990). Accordingly, to the extent Plaintiff seeks monetary damages from Defendant Calloway in her official capacity as an employee of the Alabama Department of Corrections, Defendant Calloway is entitled to sovereign immunity.[6] *See, e.g., Selensky v. Alabama*, 619 F. App'x 846, 849 (11th Cir. 2015); *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1277–78 (11th Cir. 1998); *Edwards v. Wallace Cmty. Coll.*, 49 F.3d 1517, 1524 (11th

---

[6] Additionally, "neither a State nor its officials acting in their official capacities are 'persons' [subject to suit] under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *see also Carr*, 916 F.2d at 1525 n.3 ("[S]tate officials acting in their official capacities are not 'persons' subject to liability under 42 U.S.C. § 1983.").

6

Cir. 1995).

> **b. To the extent Plaintiff seeks monetary damages from Defendant Calloway in her individual capacity, he has failed to establish a genuine issue of material fact on a Fourteenth Amendment due process claim.**

The Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." The Fourteenth Amendment "applies when an individual alleges an 'over-detention,' or a continued detention after a right to release." *Alcocer v. Mills*, 906 F.3d 944, 953 (11th Cir. 2018); *see also Ellard v. Alabama Bd. of Pardons & Paroles*, 824 F.2d 937, 943 (11th Cir. 1987) (holding that, once a state chooses to confer a right such as parole, a prisoner's interest in the right has "real substance" and may be revoked only in compliance with the Fourteenth Amendment).

"When an over-detention occurs and the Fourteenth Amendment governs the analysis, a plaintiff must demonstrate that the defendant acted with deliberate indifference to [his] due-process rights." *Alcocer*, 906 F.3d at 953. To establish deliberate indifference, a plaintiff must demonstrate "that the defendant acted with 'subjective recklessness as used in the criminal law,' . . . and to do so he must show that the defendant was actually, subjectively aware that his own conduct caused a substantial risk of serious harm to the plaintiff." *Wade v. McDade*, 106 F.4th 1251, 1262 (11th Cir. 2024).[7]

Moreover, an actionable due process claim under § 1983 requires a plaintiff to

---

[7] "[C]ivil law generally calls a person reckless who acts or (if the person has a duty to act) fails to act in the face of an unjustifiably high risk of harm that is *either known or so obvious that it should be known*." *Wade*, 106 F.4th at 1256 (11th Cir. 2024) (citing *Farmer v. Brennan*, 511 U.S. 825, 836 (1994)). By contrast, "criminal law . . . generally permits a finding of recklessness only when a person disregards a risk of harm *of which he is aware*." *Id.* (citing *Farmer*, 511 U.S. at 836–37).

7

demonstrate "an affirmative causal connection between the official's acts or omissions and the alleged constitutional deprivation." *Holt v. Glenn*, 361 F. App'x 75, 77 (11th Cir. 2010) (per curiam) (quoting *Zatler v. Wainwright*, 802 F.2d 397, 401 (11th Cir. 1986)). Applying this requirement to an over-detention claim, a plaintiff must demonstrate that the defendant's specific acts or omissions caused the alleged over-detention.

As an initial matter, Plaintiff has failed to demonstrate that Defendant Calloway acted with subjective recklessness as used in the criminal law; that is, that she was subjectively aware that her own conduct caused a substantial risk of serious harm to Plaintiff. Although Plaintiff avers that he told Defendant Calloway in May of 2020 that he had not had a revocation hearing, he fails to make a sufficient showing that Defendant Calloway was either (1) aware that she had any personal responsibility to notify the Parole Board of Plaintiff's detention; or (2) aware that Plaintiff was entitled to release based on his failure to receive a hearing within 20 business days.

First, there is no evidence before the Court that Defendant Calloway, as Acting Facility Head, was personally responsible for contacting the Board on behalf of Plaintiff. *See* Doc. 72-1 at 1–2 (in which Defendant Calloway avers that "it was not my responsibility to alert the Alabama Department of Pardons and Paroles of [Plaintiff's] arrest; nor was it my responsibility to schedule [Plaintiff] a hearing with the Board of Pardons and Paroles"). Indeed, Plaintiff admits that he is uncertain as to who specifically within the Alabama Department of Corrections was responsible for such notification. *See* Docs. 99 at 2 ("Someone at Kilby facility was responsible for letting the parole know that Plaintiff was there awaiting a revocation hearing."); 109-1 at 2 ("[I]f not the warden,

8

someone working under her supervision had the duty of notifying the board.").[8]

Second, even assuming it was in fact Defendant Calloway's responsibility to contact the Board, there is no evidence that she was subjectively aware of that fact or that she knew Plaintiff was entitled to release as a result of not receiving a timely revocation hearing. Plaintiff postulates that an individual in Defendant Calloway's position *should have* known that his rights were being violated, but he makes no showing that Defendant Calloway subjectively possessed such knowledge. *See* Docs. 95 at 4 ("Plaintiff has shown . . . that his over-detention was or should have been known by the defendant."); 99 at 4 ("Even if this defendant argue that she didn't know, this is a clearly established statutory, constitutional right of which a reasonable person would have known."); 99-1 at 2 ("[Defendant Calloway] knew or should have known that prisoners were being held at her prison without being afford a revocation hearing."); Doc. 108 at 4 ("The defendant clearly state that it is not her responsibility or her staff to notify the parole board.[] Clearly this defendant don't know her duties or is lying to the Court."). Notably, Plaintiff avers that he did not learn about Ala. Code § 15-22-32(a) until *after* he spoke with Defendant Calloway in May of 2020, *see* Doc. 89 at 2, so it is clear they did not discuss it during their conversation. Thus, the evidence fails to demonstrate deliberate indifference by Defendant Calloway.

---

[8] The Court notes that Defendant Calloway cannot be held liable under § 1983 for the actions of her employees under a theory of *respondeat superior* or vicarious liability. *See Monell v. Dep't of Soc. Servs. Of City of New York*, 436 U.S. 658, 691–95 (1978) (holding doctrine of *respondeat superior* inapplicable to § 1983 actions); *Belcher v. City of Foley, Ala.*, 30 F.3d 1390, 1396 (11th Cir. 1994) (holding that plaintiff cannot hold supervisory officials liable for the actions of their subordinates under a theory of *respondeat superior* or vicarious liability under § 1983).

9

Additionally, Plaintiff has failed to demonstrate the causation component of an over-detention claim. Throughout the record[9], Plaintiff *repeatedly* avers that the Board *knew* he was detained beyond the permissible 20-day period but knowingly and willfully failed to take any action:

- "Sometime in May 2020, Plaintiff wrote the Ala. Parole Board . . . and informed them that he had not been afford a hearing within the 20 business days[.] Plaintiff also had his daughter . . . call the Parole Board several times to inquire into why Plaintiff had not had a parole revocation hearing. Because [Board members] were not allowed to come into Kilby prison, they decided not to do anything about Plaintiff . . . being held without a hearing." Doc. 16 at 2.

- "The defendants will argue that due to the COVID-19 pandemic, the Board was unaware of Plaintiff's recapture[.] This argument don't hold water. Phone records will show that Plaintiff's daughter . . . called the Board several times in April of 2020, inquiring about why Plaintiff has not had a hearing. Plaintiff also wrote the parole board several times asking about his revocation hearing." Doc. 18 at 1–2.

- "[T]he parole board was mad at Kilby because they were not allowed on the premises. Myself and the other prisoners . . . were punished for something that we had no control over or anything to do with." Doc. 29 at 3.

- "The parole board was upset that the Warden at Kilby would not let them on the premises to conduct hearings, so they decided not to do anything and just let [me] sit in prison.[] The board could have held video hearings or should have released me[.]" Doc. 32 at 4.

- "Ass. Attorney General J. Eric Anderson lied to Montgomery Circuit Court, and Alabama Court of Criminal Appeals, stating that the Board was unaware of my recapture for several weeks[.] On March 12, 2020, Floyd County Jail . . . contacted the Alabama Parole Board[.] On March 27, 2020 I arrived at Kilby back gate, and the parole board was notified[.] On September 27, 2020 the Board sent Kilby an e-mail, ordering my immediate release. This is 6 months from when the Board had to have

---

[9] When considering a motion for summary judgment, the Court "*need* consider only the cited materials, but it *may* consider other materials in the record." Fed. R. Civ. P. 56(c)(3) (emphasis added).

known that I was recaptured." Doc. 49 at 9–10.

- "At all times the [parole board] defendants were fully aware of Plaintiff[']s whereabouts. The defendants made a conscience decision to let Plaintiff sit inside of prison without affording him a hearing or releasing him.[] This is not a mere case of negligence, these are intentional acts, knowingly and willingly. For every day that they couldn't come on the premises of Kilby prison, they knew that Plaintiff . . . had not been afford a hearing, as required by law." Doc. 53 at 5.

- "Plaintiff will show that the [parole board] defendants knew Plaintiff was at Kilby prison from March 27, 2020 until his release.[] On March 27, 2020 Plaintiff arrived at Kilby prison, and . . . [t]he prison and the transportation agency had to call the Alabama parole board . . . in order for Plaintiff to be accepted at Kilby prison. Again Plaintiff would aver that the board was notified of Plaintiff[']s arrival at the prison.[] Plaintiff didn't allege that Warden Calloway failed to notify the board until after the defendants submitted to Montgomery Circuit Court in their motion to dismiss that for several weeks they were unaware of Plaintiff[']s incarceration, which rightfully is a straight lie." Doc. 55 at 7–8.

- "Warden Calloway was not the warden at that time. As far as Warden Babers, Plaintiff would assume that she notified the Board or one of her employees notified the board. [T]he wardens notification is not the only trigger of a prompt revocation hearing. Actual knowledge of the parolee incarceration surely triggers the time clock, and the executed of the warrant also triggers the time clock, plus the parolee notice to the board that he wishes to have a prompt hearing. All of these things happened and because of them[,] the time clock was triggered.[] [T]he defendant nor Plaintiff alleges that 'no' warden at Kilby Prison notified the board of plaintiff's return, only Warden Calloway, who was not the warden at that time. Keep in mind that Plaintiff alleged Warden Calloway didn't notify the board because the defendants lied and submitted to Montgomery Circuit Court that they were unaware of Plaintiff's whereabouts for several weeks." Doc. 55 at 12.[10]

---

[10] Plaintiff further asserts, throughout numerous unsworn documents, that he is *certain* the Board was notified of his detention in March of 2020 and nevertheless knowingly and willfully violated his rights. *See, e.g.,* Docs. 28 at 4; 40 at 2; 56 at 11; 58 at 1; 59 at 2. However, "[u]nsworn statements may not be considered by a district court in evaluating a motion for summary judgment." *See, e.g., Roy v. Ivy*, 53 F.4th 1338, 1347 (11th Cir. 2022) (citing *Carr v. Tatangelo*, 338 F.3d 1259, 1273 n.26 (11th Cir. 2003), *as amended* (Sept. 29, 2003).

Plaintiff is adamant throughout his sworn filings that the Board had actual knowledge of his detention as early as March of 2020; that the Board willfully failed to either schedule a hearing or release him despite that knowledge; and, quite notably, that he only brought Defendant Calloway into this action after the Board lied about that knowledge. These averments directly contradict Plaintiff's later unsworn and unsupported assertion that he "would have been released had [Defendant Calloway] contacted the parole board," Doc. 76-1 at 3, and render it impossible for a reasonable factfinder to conclude that Plaintiff's over-detention was caused by Defendant Calloway's failure to notify.

Because the evidence fails to establish either deliberate indifference by Defendant Calloway or that she affirmatively caused Plaintiff's over-detention, Plaintiff has failed to establish a genuine issue of material fact on his Fourteenth Amendment due process claim. Accordingly, Defendant Calloway is entitled to summary judgment.

   c. **To the extent Plaintiff's filings can be interpreted as attempting to state any further claims against Defendant Calloway, such claims are not properly before the Court.**

After he filed his amended complaint under 42 U.S.C. § 1983, Plaintiff acknowledged that, pursuant to *Heck v. Humphrey*, 512 U.S. 477 (1994), any claim challenging the legality of his conviction or sentence is not cognizable in a § 1983 action. *See* Doc. 29 at 1. Accordingly, Plaintiff made clear that is not seeking release from imprisonment, but merely "compensation for holding Plaintiff for 5 additional months" beyond the 20-day period. *Id.* at 2 ("A ruling in Plaintiff[']s] favor would only determine how much money the defendants would have to pay for the illegal incarceration of five

months."). He explicitly stated that this is "the only issue/claim" on which he wished to proceed, and "all of the other claims can be dismissed without prejudice." *Id*. at 3.

He reiterated this intention throughout his later filings. *See* Docs. 55 at 2 ("The essential factual basis of this civil action is the claim that the defendants detained Plaintiff 5 months beyond the 20 business day period[.] Plaintiff willingly dismissed all of the other claims[.]"); 59 at 2 ("Plaintiff never had a revocation hearing within the 20 business days and was not released until five months after the 20 days had expired. This is the only claim that has been properly exhausted for review by this Court."); 94 at 4 (providing that the only substantive issue before the Court is "[w]hether Warden Calloway violated Plaintiff's due process rights by not notifying the Alabama Parole Board in a timely manner"); 99-1 at 2 (acknowledging that Defendant Calloway "had no control over any event that happened after Plaintiff was released").

Accordingly, to the extent any of Plaintiff's pleadings or subsequent filings appear to challenge events that occurred *after* his release from Kilby on September 1, 2020— including the validity and outcome of his subsequent revocation hearing as well as any subsequent denials of parole—any such claims are not properly before the Court, are not cognizable in a § 1983 action pursuant to *Heck v. Humphrey*, and will not be considered here.

V. **CONCLUSION**

Accordingly, for the foregoing reasons, it is ORDERED that:

(1)    Plaintiff's Motion for Judgment on the Pleadings (Doc. 95) is DENIED;

(2)    Defendant Calloway's Motion for Summary Judgment (Doc. 104) is

GRANTED;

(3)     Judgment is ENTERED in favor of Defendant Calloway and against Plaintiff; and

(4)     This case is DISMISSED with prejudice.

Final Judgment will be entered separately.

DONE this 3rd day of February, 2026.

                Stephen M. Doyle
                CHIEF U.S. MAGISTRATE JUDGE